DUMAS *v.* MONSANTO CHEMICAL COMPANY.

5-1625                                    316 S. W. 2d 836

Opinion delivered October 20, 1958.

*Tom Gentry* and *William M. Dabbs, Jr.,* for appellant.

*Davis & Ragsdale,* for appellee.

GEORGE ROSE SMITH, J. In 1954 the appellee's predecessor, Lion Oil Company, entered into a labor contract with Local No. 224, International Association of Machinists. That contract provides for the accrual of certain seniority rights on the part of the company's employees. On August 8, 1955, the company shut down some of its maintenance equipment and temporarily laid off thirty-one of its employees. Nine days later the company decided to make a permanent reduction in its working force and, in that connection, discharged the thirty-one men who had been temporarily laid off and forwarded to each of them the termination pay provided for in the labor agreement.

Later on a number of the discharged employees attempted to assert a grievance through the labor union. It was their contention that their seniority rights continued in force for a year after their discharge and that within that year the employer had, in violation of the labor contract, filled certain jobs by retaining or promoting men whose seniority rights were inferior to those held by the discharged employees. The union officers refused to present these grievances, being of the opinion that there had been no breach of contract on the part of the employer. The present suit was then filed by fourteen of the discharged employees. In substance their complaint renews the grievance that was submitted to the union and seeks damages from the employer and injunctive relief against the asserted violation of the collective bargaining agreement. The chancellor dismissed the complaint for want of equity.

A number of contentions are urged in the briefs, but we find it necessary to discuss only the employer's contention that, although these appellants would admittedly have been entitled to priority had the company increased its working force by employing additional workers within a year after the appellants were laid off,

the contract did not contemplate or require that men already working for the company should be discharged in order to make places for these appellants. In our view this contention is well taken and is decisive of the case.

The labor contract classifies the various jobs under two broad categories and establishes a corresponding system of dual seniority. The upper category includes seventeen specified crafts, such as carpentry, painting, welding, blacksmithing, etc. The lower category is called the Yard Pool and includes all workmen who are not assigned to jobs in one of the seventeen skilled crafts. A new employee enters the Yard Pool and, after a training period of forty-five days, begins to accumulate seniority in the bargaining unit as a whole. When he is promoted to work in one of the crafts he continues to accrue seniority in the bargaining unit and also begins to accumulate seniority in the particular craft to which he is assigned. As between the two, craft seniority is declared to be prior to bargaining unit seniority.

Promotions, demotions, and temporary layoffs are determined on the basis of seniority. Vacancies in the various crafts are filled by promoting men from the Yard Pool according to their seniority, and, conversely, if the company reduces the working force in a particular craft, the employee in that craft who is youngest in seniority is the first to be demoted to the Yard Pool. When it becomes necessary for men to be laid off, those in the Yard Pool with the least seniority must be the first to be let go.

The present dispute goes back to the employer's decision to lay off thirty-one men on August 8, 1955. By the terms of the labor agreement the employer was required to select for release the thirty-one men then in the Yard Pool who were lowest in seniority, and it is conceded that this selection was properly made. Although all of these appellants had formerly worked in a craft and in some instances had acquired substantial craft seniority, they were unlucky in that they were

working in the Yard Pool on the particular day when the company found it necessary to reduce its working force. Hence these appellants were laid off, in accordance with the contract, simply because they happened to be in the Yard Pool on August 8, 1955; while other employees junior in service were retained, simply because they happened to be assigned to a craft on that date.

The contract provides that the accrued seniority of an employee who has been laid off through no fault of his own shall continue to exist for one year after the date of his layoff (or for 180 days if he has less than five years of bargaining unit seniority). After these appellants had been let go the company naturally continued to make promotions and demotions to and from the Yard Pool and within the several crafts. It must be strongly emphasized at this point that the company did not employ any new workmen in its maintenance department during the year following the appellants' release; there was merely a shifting about of employees who were on the payroll on August 8, 1955, some of whom, as we have said, had less seniority than the appellants but were fortunate in having been assigned to service in a craft on the day when the employer decided to let thirty-one men go.

The appellants now insist that, since their seniority rights continued for a year after they were laid off, the company could not within that time award a promotion to any other employee whose seniority rights were inferior to those of any one of the appellants. On this premise it is argued that, when the occasion for a promotion arose, the contract required the company to discharge a retained employee and to recall one of the appellants to fill the position.

This contention is answered, in our opinion, by the plain language of the contract: ''The employee last employed and not then permanently assigned to a craft shall be the person first laid off in the event there is a reduction in the number of employees. The employee last laid off, through no fault of his own, shall, subject

to the following provisions of this Article, be the person first re-employed in the event additional employees are employed . . . ."

Taken as a whole, the contract leaves no real room for doubt about its meaning. The clause preserving seniority rights for a period of a year fixes a reasonable and practical limitation upon the preferred position accorded to former employees. The only preference actually stated in the contract is that the last employee to be laid off is entitled to be the person first re-employed "in the event additional employees are employed." Here there was no occasion for anyone to be re-employed, for no *additional* employees were added to the working force during the year following the appellants' release on August 8, 1955. The contract admittedly protects an employee of limited seniority who is fortunate enough not to be assigned to the Yard Pool on the day when the employer takes the major step of laying off a number of workmen. We are unwilling to read into the agreement a further provision, which is certainly not expressed, that this same employee of limited service must be discharged to make a place for the former worker whenever the employer takes the minor step of making a promotion within the existing working force.

Affirmed.